**SO ORDERED.**

**SIGNED this 11 day of March, 2011.**

*James P. Smith*
_____
**JAMES P. SMITH**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION


| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| | : | |
| ROY C. DUKE | : | |
| MONTIE L. DUKE, | : | |
| Debtors | : | Case No. 10-31390 JPS |
| | : | |


BEFORE

JAMES P. SMITH
UNITED STATES BANKRUPTCY JUDGE



APPEARANCE:


Debtors:          Mr. Barry G. Irwin
                  P.O. Box 80506
                  Athens, GA 30608

Wells Fargo Bank, N.A.:    Ms. Elizabeth A. Stuhldreher
117 1/2 Bradford Street
Suite 4
Gainesville, GA 30501

Mr. Jonathan S. Adams
Six Concourse Parkway, Suite 3200
Atlanta, GA 30328

Chapter 13 Trustee:    Mr. Tony D. Coy
P.O. Box 954
Macon, GA 31202

## <u>MEMORANDUM OPINION</u>

This matter presents the issue of whether certain "supplemental provisions" contained in Debtors' Chapter 13 plan can be imposed upon Wells Fargo Bank, N.A. ("Wells Fargo"), which holds the first priority security deed on Debtors' residence.

## <u>FACTS</u>

Debtors filed their Chapter 13 case on August 5, 2010. Wells Fargo filed a proof of claim for $58,451.91, which includes a prepetition arrearage claim of $1,494.44. Wells Fargo's claim is secured solely by Debtors' principal residence.

As it relates to Wells Fargo, Debtors' Chapter 13 plan provides for the Chapter 13 trustee to pay the arrearage claim, plus interest of 7.25 % per annum, from periodic payments received from Debtors. Debtors are to make their monthly postpetition payments to Wells Fargo outside of the plan.

Debtors also included in their plan certain "special provisions" seeking to impose affirmative duties on Wells Fargo (or any servicer of the claim) with respect to the claim and any payments it will receive. Those "special provisions" are attached as Addendum-1 to this Opinion. Wells Fargo objected to confirmation of Debtors' plan on the grounds, inter alia, that these "special provisions" violate 11 U.S.C. § 1322(b)(2).[1]

---

[1] All other confirmation objections asserted by Wells Fargo were resolved and withdrawn prior to the confirmation hearing.

After hearing argument of counsel at the confirmation hearing on November 23, 2010, and upon the recommendation of the Chapter 13 trustee, the Court confirmed Debtors' Chapter 13 plan without the "special provisions", reserving a decision upon those provisions until the parties had an opportunity to file briefs.

Debtors and Wells Fargo have now filed their briefs. The Chapter 13 trustee has not filed a brief and thus has taken no position on whether the "special provisions" can be imposed on Wells Fargo as part of the confirmed plan.

## DISCUSSION

In considering this matter, the Court requested on two occasions that the parties either stipulate or introduce into evidence the note and security deed evidencing Wells Fargo's claim. On two separate occasions, Wells Fargo attached to its briefs copies of what it contends are the security deed and an assignment thereof to Wells Fargo. However, without proper authentication, these documents are not admissible as evidence. Fed. R. Evid. 901(a).

Counsel for Debtors has filed a stipulation of authenticity of the security deed attached to the proof of claim filed by Wells Fargo. However, counsel for Debtors has not stipulated as to the authenticity of the note attached to the proof of claim.[2]

---

[2] Counsel for Debtors bases his refusal to stipulate the authenticity of the note on <u>his</u> not having seen the original note and <u>his</u> not knowing the terms of the note. The Court is perplexed and troubled by the fact that counsel for Debtors apparently did not have his clients review and take a position as to the authenticity of the note since it was Debtors, and not their counsel, who signed the note. The absurdity of the refusal to stipulate to the authenticity of the note is demonstrated by the fact that Debtors have not objected to Wells

Although Debtors bear the ultimate burden to prove the plan is confirmable, Wells Fargo, as the objecting creditor, has the initial burden of going forward with some evidence to support its objection.  See In re Glisson, 430 B.R. 920, 923 (Bankr. S.D. Ga. 2009).  Wells Fargo contends that the "special provisions" improperly modify its rights in violation of section 1322(b)(2).  Accordingly, Wells Fargo has the initial burden of introducing the relevant loan documents which establish its rights. Since the security deed, to which Debtors have stipulated, is the only admissible document evidencing Wells Fargo's claim and its rights, this is the only document which the Court may consider in ruling on Wells Fargo's objection.[3]

Wells Fargo argues that the "special provisions" violate 11 U.S.C. § 1322(b) which provides, in pertinent part:

> (b) . . . the plan may—
>
>    . . .
>
>    (2)    modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence. . .

In addition, the "special provisions" bring into play other provisions of the Code which will be discussed as appropriate.

---

Fargo's proof of claim.  If Debtors honestly did not recognize the authenticity of the note attached to Wells Fargo's claim, they would surely have objected to the claim.

[3] Since Debtors have not objected to Wells Fargo's contention that it owns this claim, the absence of an admissible assignment document is of no consequence.

5

Subparagraphs (a) and (c) of the proposed "special provisions" direct the

application of payments on the prepetition arrearage and on the postpetition payments

on the loan.  These provisions are inappropriate for a number of reasons.

First, the Bankruptcy Code already provides for the application of plan

payments.  As the court in In re Carlton, 437 B.R. 412 (Bankr. N.D. Ala. 2010)

explained:

> Section 1322(b)( 2) prohibits a chapter 13 plan from modifying 'a
> claim secured only by a security interest in real property that is the
> debtor's principal residence...' (e.g. the Bank's claim in this case), but
> Section 1322(b)(5) carves out an exception.  It states that
> 'notwithstanding [Section 1322(b)(2) the plan may] provide for the
> curing of any default within a reasonable time and maintenance of
> payments while the case is pending. . .'  In other words, Section
> 1322(b)(5) allows a chapter 13 debtor to bifurcate payment of his home
> mortgage.  First, the plan may provide for payment of the on-going,
> postpetition installments as they become due under the mortgage
> contract, and those installments are to be treated and applied as if there
> were no default and no arrears.  Second, the plan may provide for the
> cure of the prepetition arrears by spreading their payment over a
> reasonable time, which is usually the life of the plan.  'The effect of
> section 1322(b)(2) and (5) is to potentially split the treatment of
> mortgagee's secured claim by the plan— one secured for the mortgage
> going forward and one secured for the arrearage— but it does not
> compromise the amount of the aggregate secured claim or the rights of
> the secured party to recover the arrearage.' [Universal American
> Mortgage Co. v. Bateman (In re Bateman)], 331 F.3d at 821, n. 5 [11th
> Cir. 2003] (citing Nobelman v. Am. Savs. Bank, 508 U.S. 324, 331-32,
> 113 S. Ct. 2106, 124 L. Ed. 2d 228 1993)).
>
> . . .
>
> This Court concludes that when a plan provides for the payment of both
> prepetition arrears and on-going postpetition mortgage payments— as
> does the Debtor's Plan in this case— an attempt in the plan to

6

> recapitulate in detail the manner in which the payments are to be
> applied adds nothing but clutter, creates ambiguity and uncertainty with
> regard to whether something more or less than what the Code allows
> was intended, and otherwise enhances the opportunity for mischief and
> fosters litigation. . . .  This Court adopts the conclusions reached by the
> court in In re Maupin, [384 B.R. 421, 430 (Bankr. W.D. Va. 2007)]
> with regard to crowding chapter 13 plans with extraordinary provisions
> that include questionable interpretations of the Code: '[I]f Paragraph 11
> L is an accurate statement of law, then it is unnecessary.  If it is not an
> accurate statement of law, then it violates the implied statutory
> prohibition against including any provision that is not consistent with
> the Bankruptcy Code.  See 11 U.S.C. § 1322(b)(11). . .  As such it
> must be deleted from the plan before it may be confirmed.'

437 B.R. at 418-420.

Further, 11 U.S.C. § 1327(a) provides, "The provisions of a confirmed plan

bind the debtor and each creditor. . ."  Debtors' plan makes it clear that the trustee

will make periodic payments on the prepetition arrearage claim of Wells Fargo and

that Debtors will make the postpetition payments as they come due.  Thus, the

provisions of the plan make clear how the payments are to be applied.  There is no

need for additional direction.  If Wells Fargo fails to apply the payments accordingly,

it will be subject to sanction under 11 U.S.C. § 524(i).

Subparagraph (a) also provides that "the pre-petition arrearage. . . shall have a

zero balance upon entry of the discharge order in this case."  11 U.S.C. § 1328(a),

which controls the extent and effect of a discharge in a Chapter 13 case, provides, in

part:

> [A]fter completion by the debtor of all payments under the plan. . .
> the court shall grant the debtor a discharge of all debts provided for by

7

the plan. . . ., except any debt— (1) provided for under section
1322(b)(5).  (emphasis supplied)

Since Debtors' plan provides for the full payment of Wells Fargo's prepetition

arrearage claim, if Debtors make all of their payments under the plan, the prepetition

arrearage claim will be paid in full and discharged.  Since this occurs by operation of

law, there is no need for a "special provision" to describe the extent of discharge after

completion of the plan.

Subdivision (c) also provides that the postpetition payments are to be applied

"to the next post-petition payment due".  However, paragraph 3 of the security deed

evidencing Wells Fargo's claim controls the application of payments from Debtors.

Pursuant to the security deed, payments are applied first to mortgage insurance

premiums paid by Wells Fargo, then to any taxes and hazard insurance premiums

paid by Wells Fargo, then to interest due under the note, then to amortization of

principal and finally to any late charges due under the note.  Thus, by contract, Wells

Fargo and Debtors have agreed to the application of payments.  Because 11 U.S.C.

§ 1322(b)(2) prohibits Debtors from modifying the rights of Wells Fargo under the

security deed, an attempt through the plan to alter the security deed provision

regarding application of payments is prohibited.

Subparagraph (d) requires Wells Fargo to give the trustee, Debtors and

Debtors' attorney at least 60 days advance written notice of any changes in the

interest rate on the note.  The security deed does not address the notification

8

requirements with respect to changes in interest rates.  Although the notification

requirements may be addressed in the note, the note has not been properly admitted

into evidence and the Court can make no conclusion as to whether the "special

provisions" improperly modify the rights of Wells Fargo.

Wells Fargo has failed to show that subparagraph (d) modifies its rights in

violation of 11 U.S.C. § 1322(b)(2).  Because subparagraph (d) violates no provision

of the Bankruptcy Code, this provision can be included as part of the confirmed

plan.[4]

Subparagraph (e) requires Wells Fargo to give Debtors and Debtors' attorney

60 days advance written notice of changes in the escrow payments resulting from

changes in property taxes and property insurance premiums.  However, under the

Real Estate Settlement Procedures Act ("RESPA"),[5] Congress has already prescribed

the manner in which lenders must provide information regarding escrow accounts

and payments.  Pursuant to 12 U.S.C. § 2609(c), Wells Fargo must give Debtors an

annual statement regarding tax and insurance escrows.  By its terms, the security deed

between the parties acknowledges and incorporates these RESPA requirements.

Outside of bankruptcy, a mortgage borrower would not have the right to

---

[4] Because it has not been properly introduced, the Court cannot take notice of the copy of
the note attached to the proof of claim.  Nevertheless, according to that copy, this is a fixed
rate loan.

[5] 12 U.S.C. § 2601 et seq.

9

demand from its lender more than is required by the security deed and RESPA.  The

Bankruptcy Code does not provide this Court with the power to require Wells Fargo

to do anything more than is required under RESPA and the parties' agreement.

Accordingly, this "special provision" is inappropriate.

Subparagraph (f) requires Wells Fargo to provide the trustee, Debtors and

Debtors' attorney with an "Annual Account Statement" itemizing the application of

payments received in the prior year.  The provision also provides that Debtors may

ask for a final statement upon completion of the plan payments.  Finally, the

provision provides that Debtors may file a contempt motion against Wells Fargo if it

fails to provide these statements.

Again, Congress has already addressed these issues through RESPA.

12 U.S.C. § 2605(e) requires Wells Fargo to respond to written requests for

information from Debtors.  Wells Fargo must respond and provide Debtors the

information within 60 days of the written request.  12 U.S.C. § 2605(f) imposes

liability upon Wells Fargo for any damages incurred by Debtors as a result of Wells

Fargo failing to properly respond to Debtors' request.  Thus, there is no need to

provide a special provision in the plan to cover something already required under

RESPA.  As for the provision providing for contempt sanctions against Wells Fargo,

RESPA already provides a remedy to Debtors if Wells Fargo does not comply with

its RESPA obligations.

10

> A frequently stated principle of statutory construction is that when
> legislation expressly provides a particular remedy or remedies, courts
> shall not expand the coverage of the statute to subsume other remedies.

National R.R. Passenger Corp. v. National Association of R.R. Passengers, 414 U.S.

453, 458, 94 S. Ct. 690, 38 L. Ed. 2nd 646 (1974).

The last, unlettered and unnumbered paragraph of the "special provisions"

prescribes the effect of Debtors paying the arrearage claim and timely making all

postpetition payments.  Under 11 U.S.C. § 1322(b)(5), with respect to a loan secured

solely by a debtor's principal residence, where such loan matures after the completion

of the plan, the plan may provide for the cure of any defaults.  As a result of 11

U.S.C. § 1328(a)(1), once all plan payments are made, all claims relating to the loan

will be discharged except for the principal balance remaining after completion of the

plan.  11 U.S.C. § 524(a)(2) prohibits the creditor from attempting to recover any

amounts other than the remaining principal balance due on the loan.  Thus, the

Bankruptcy Code already prescribes the effect of completing all payments under the

plan.  An attempt to expand what is statutory prescribed would be inappropriate.

In conclusion, the Court agrees with the concerns expressed by the court in In

Re Carlton regarding the lack of uniformity and cost of compliance posed by these

types of plan provisions.  As that court noted:

> Probably the most compelling argument...against confirmation of the
> ["special provisions"] is the countless variations among similar
> provisions that inevitably will be scripted into chapter 13 plans by a
> bevy of debtors' attorneys in different bankruptcy courts throughout the

11

country.  Each attorney will attempt to rectify what he or she views as the most egregious conduct of the mortgage industry that imperils chapter 13 debtors.  Some will want notices of postpetition advances and expenses filed within 30 days of when they were made, and with the consequences of noncompliance being total forgiveness of the advance or expense; some will require an officer of the mortgage creditor appear and testify regarding the authenticity of advances or expenses, and their reasonableness; some will impose monetary penalties for non-compliance; some will treat non-compliance as an intentional stay violation; some will want an option to postpone repayment of escrow shortages, advances and expenses until the final maturity of the mortgage loan, or the option to pay them over time after discharge.  The potential is unlimited.  Provisions allowed by the Northern District of  Alabama may be different from those permitted by the Southern and Middle District of Alabama, or the Southern District of New York, or the District of Alaska.  Potentially, and at considerable costs, mortgage creditors will be required to comply with a hodgepodge of nonconforming instructions, controls, directives and restrictions put into chapter 13 plans by imaginative debtors' attorneys throughout the 50 States, the District of Columbia, Puerto Rico and beyond.

437 B.R. at 428-429.

In the Middle District of Georgia, 7,485 Chapter 13 cases were filed during the 12 month period ending December 31, 2010.[6]  The ability to efficiently handle this volume of cases would be seriously jeopardized if the Court and the Chapter 13 trustee were required to analyze different versions of these types of provisions in every case.

This Court is aware of reports in the media about problems in the home mortgage market relating to fraudulent foreclosures, improper charges on home mortgages and the inability of mortgage debtors to find responsible parties at lenders

---

[6] See "Bankruptcy Statistics" Table F-2, published at www.uscourts.gov

and mortgage loan servicers who can respond to and deal with these problems.

Indeed, this Court has seen incidences in the cases before it where the debtor or

Chapter 13 trustee has found it difficult to get effective responses from lenders and

loan servicers on questions relating to loans, loan balances and loan charges.  Thus,

this Court appreciates the perceived need to try to address these issues and concerns

through special provisions in Chapter 13 plans.

 Nevertheless, as explained above, most of these issues are already addressed

and controlled by the Bankruptcy Code and RESPA.  From a practical standpoint, if

lenders and loan servicers are ignoring existing law, there is no reason to believe they

will be any more responsive to special provisions in a plan.  However, this does not

leave the debtor or trustee without remedy.  The Code and nonbankruptcy law

provide remedies against lenders and loan servicers who fail to comply with their

duties and this Court will not hesitate to hold such lenders and loan servicers

accountable where appropriate.

 Finally, to the extent that there is a need in Chapter 13 cases involving home

mortgages for reporting and notice requirements greater than those prescribed by

RESPA, the Court believes that it is more appropriate to address these matters on a

nationwide basis through rule making bodies authorized and designed to address

concerns affecting the nation as a whole.  Consistent therewith, on September 14,

2010, the Judicial Conference of the United States approved the recommendations of

13

the Committee on Rules of Practice and Procedure with respect to, inter alia, changes

to Rule 3001 and the adoption of proposed Rule 3002.1[7].  These proposed rules will

address many of the disclosure and reporting requirements which the "special

provisions" addressed.  If adopted by the Supreme Court and approved by Congress,

these rules will become effective December 1, 2011.

Accordingly, for the reasons set forth above, the plan, as confirmed, will be

modified to include subparagraph (d) of the "special provisions."  All of the other

proposed "special provisions" are hereby disapproved.

---

[7] The proposed changes to Rule 3001 and the proposed new Rule 3002.1 are attached
hereto as Addendum 2.

## ADDENDUM 1

Confirmation of the plan imposes an affirmative duty on the holder and/or servicer of a claim secured by Debtor's principal residence ("Lender") as follows:

(a) To apply payments received from Trustee on the pre-petition arrearage, if any, only to such arrearage.  For purposes of this plan, the pre-petition arrearage shall include all sums included in the allowed proof of claim and shall have a zero balance upon entry of the discharge order in this case.

(b) Upon plan completion, Lender is precluded from imposing late payment charges or other default -related fees and service charges based solely on a pre-petition default or defaults.

(c) To apply post-petition monthly mortgage payments paid by Debtor to the next post-petition payment due.

(d) To notify Trustee, Debtor, and Debtor's attorney, in writing, of any changes in the interest rate for any non-fixed rate or adjustable rate mortgages and the effective rate of such adjustment or adjustments not less than 60 days in advance of the date such changes become effective or at such time as the change becomes known to Lender if the change is to implemented in less than 60 days.

(e) To notify Debtor and Debtor's attorney in writing of any change in the property taxes and/or the property insurance premiums that would either increase or reduce the escrow portion, if any, of the monthly mortgage payments and the

15

effective date of any such adjustment or adjustments not less than 60 days in advance
of the date such change becomes effective or at such time as the change becomes
known to Lender if the change is to [be] implemented in less than 60 days.

    (f) Unless the [L]ender voluntarily files a statement by February 15th of each
year governed by this plan, Debtor may file a Request for Annual Account Statement
and serve it upon Lender, its attorney and Trustee.  Within 33 days of service of
service [sic] of the Request for Annual Account Statement upon Lender, the Lender
shall file with the court and serve upon Debtor, Debtor's attorney, and Trustee a
current Annual Account Statement itemizing in detail in a legible format the
following amounts paid by the Debtor during the preceding calendar year: (1) all
payments applied to the principal balance; (2) all payments applied to interest; (3) all
payments applied to any escrow account; and (4) all payments applied to any pre-
petition arrearage claim and the remaining balance unpaid as of the date of the
statement; and (5) all fees and charges alleged to have accrued post-petition, along
with an explanation thereof.  Debtor may file a motion for contempt of the
confirmation order if Lender fails to file and serve the Annual Account Statement as
set forth herein, and sanctions may be imposed.  Debtor may file a Request for Final
Account Statement and serve it upon Lender, Lender's attorney and Trustee within
30-40 days after Trustee files a Notice of Plan Completion.  Within 33 days of
service of service [sic] of the Request for Final Account Statement upon Lender, the

16

Lender shall file with the court and serve upon Debtor, Debtor's attorney, and

Trustee an Annual/Final Account Statement itemizing in detail in a legible format the

amounts paid by Debtor as set forth herein, during the preceding calendar year, if not

already filed pursuant to a prior request, and year to date.  Debtor may file a motion

for contempt of the confirmation order if Lender fails to file and serve the

Annual/Final Account Statement as set forth herein, and sanctions may be imposed.

If Debtor pays the cure amount referred to above in paragraph 2 L (3) and

specified also in paragraph 2 (F) of this plan, or in such lesser or greater amount as

may be established by Lender's allowed proofs-of-claim, while timely making all

required post-petition payments, the debt secured by Debtor's principal residence

will, at the conclusion of the plan, be reinstated according to its original terms,

extinguishing any rights of Lender to recover any amount alleged to have arisen prior

to the petition date other than the principal balance owing on the date of discharge of

Debtor.

## ADDENDUM 2

**Rule 3001.  Proof of Claim**

. . .

(c) SUPPORTING INFORMATION

(1) *Claim Based on a Writing.*  When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim.  If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

(2) *Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply.*  In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

(B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

(C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim.  If an escrow account has been

18

established in connection with the claim, an escrow account statement prepared as of

the date the petition was filed and in a form consistent with applicable nonbankruptcy

law shall be filed with the attachment to the proof of claim.

(D) If the holder of a claim fails to provide any information

required by this subdivision (c), the court may, after notice and hearing, take either or

both of the following actions:

(i) preclude the holder from presenting the omitted

information, in any form, as evidence in any contested matter or adversary

proceeding in the case, unless the court determines that the failure was substantially

justified or is harmless; or

(ii) award other appropriate relief, including reasonable

expenses and attorney's fees caused by the failure.

**Rule 3002.1   Notice Relating to Claims Secured by Security Interest in the**

**Debtor's Principal Residence.**

(a) IN GENERAL.  This rules applies in a chapter 13 case to claims

that are (1) secured by a security interest in the debtor's principal residence, and (2)

provided for under § 1322(b)(5) of the Code in the debtor's plan.

(b) NOTICE OF PAYMENT CHANGES.  The holder of the claim

19

shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any

change in the payment amount, including any change that results from an interest rate

or escrow account adjustment, no later than 21 days before a payment in the new

amount is due.

(c) NOTICE OF FEES, EXPENSE, AND CHARGES.  The holder of

the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice

itemizing all fees, expenses, or charges (i) that were incurred in connection with the

claim after the bankruptcy case was filed, and (ii) that the holder asserts are

recoverable against the debtor or against the debtor's principal residence.  The notice

shall be served within 180 days after the date on which the fees, expenses, or charges

are incurred.

(d) FORM AND CONTENT.  A notice filed and served under

subdivision (b) or (c) of this rule shall be prepared as prescribed by the appropriate

Official Form, and filed as a supplement to the holder's proof of claim.  The notice is

not subject to Rule 3001(f).

(e) DETERMINATION OF FEES, EXPENSES, OR CHARGES. On

motion of the debtor or trustee filed within one year after service of a notice of

subdivision (c) of this rule, the court shall, after notice and hearing, determine

whether payment of any claimed fee, expense, or charge is required by the underlying

agreement and applicable nonbankruptcy law to cure a default or maintain payments

20

in accordance with § 1322(b)(5) of the Code.

(f) NOTICE OF FINAL CURE PAYMENT.  Within 30 days after the
debtor completes all payments under the plan, the trustee shall file and serve on the
holder of the claim, the debtor, and debtor's counsel a notice stating that the debtor
has paid in full the amount required to cure any default on the claim.  The notice shall
also inform the holder of its obligation to file and serve a response under subdivision
(g).  If the debtor contends that final cure payment has been made and all plan
payments have been completed, and the trustee does not timely file and serve the
notice required by this subdivision, the debtor may file and serve the notice.

(g) RESPONSE TO NOTICE OF FINAL CURE PAYMENT.  Within
21 days after service of the notice under subdivision (f) of this rule, the holder shall
file and serve on the debtor, debtor's counsel, and the trustee a statement indicating
(1) whether it agrees that the debtor has paid in full the amount required to cure the
default on the claim, and (2) whether the debtor is otherwise current on all payments
consistent with § 1322(b)(5) of the Code.  The statement shall itemize the required
cure or postpetition amounts, if any, that the holder contends remain unpaid as of the
date of the statement.  The statement shall be filed as a supplement to the holder's
proof of claim and is not subject to Rule 3001(f).

(h) DETERMINATION OF FINAL CURE AND PAYMENT.  On
motion of the debtor or trustee filed within 31 days after service of the statement

21

under subdivision (g) of this rule, the court shall, after notice and hearing, determine whether the debtor has cured the default and paid all required postpetition amounts.

(i) FAILURE TO NOTIFY.  If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:

(1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

** END OF DOCUMENT **